**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | **CRIM. NO. 20-415, 21-379** |
| **v.** | : | |
| **SAMYRE WASHINGTON** | : | |

# UNITED STATES' SENTENCING MEMORANDUM

The defendant was the second-ranking member and top lieutenant in the Herbert Robinson drug trafficking organization ("DTO"), which sold hundreds of kilograms in the Philadelphia and elsewhere from February 2019 to January 2021. As part of his management position in the DTO, the defendant travelled internationally to meet with prospective suppliers, supervised the activities of lower-ranking members of the DTO, and handled transactions involving, collectively, hundreds of kilograms of cocaine and millions of dollars in cash drug proceeds. The defendant also laundered the cash that he made from his drug trafficking activities. The defendant committed these drug and money laundering crimes, despite having a prior federal fraud and drug trafficking conviction in this district. After balancing the severity of his conduct, the need for deterrence, and the remaining § 3553(a) factors—most notably, his complete acceptance of responsibility and the need to ensure consistency in sentencing among similarly situated individuals—the government submits that a sentence below the 324- to 405-month guidelines range is appropriate.

## I. PROCEDURAL BACKGROUND

On August 11, 2021, the defendant was charged by superseding indictment with seven drug trafficking counts: conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine (one count), attempt to possess with intent to distribute 5 kilograms or more of cocaine and aiding and abetting (two counts), possession with intent to distribute 5 kilograms

of more of cocaine and aiding and abetting (one count), and distribution of 5 kilograms or more of cocaine (two counts) and 500 kilograms or more of cocaine (one count). On September 22, 2021, the defendant was charged in a one-count Information charging with conspiracy to commit money laundering, in violation of 18 U.S. C. § 1956(h). On October 19, 2021, the pled guilty to all eight counts pursuant to a guilty plea agreement.

## II. SENTENCING CALCULATION

The government agrees with the Probation Office's calculation of the guidelines range of 324 to 405 months' imprisonment, based on an offense level of 40 and criminal history category of II.

The guideline calculation is as follows:

- Base offense level (§ 2D1.1(a)): 38 (over 450 kilograms of cocaine)
- Maintaining a premise for drug trafficking (§ 2D1.1(b)(12): +2
- Manager or supervisor (§ 3B1.1(b)): +3
- Acceptance of responsibility (§ 3E1.1): -3
- Total offense level: 40

The defendant is in criminal history category II, based on three criminal history points.

## III. ANALYSIS OF STATUTORY FACTORS

After calculating the guidelines range and ruling on any pending motions, the Court must consider the sentencing factors set forth in Section 3553(a), which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide

the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

**A. The Nature and Circumstances of the Offense**

The defendant's crimes were incredibly serious, as he chose to act as the second-ranking member and top lieutenant to the Robinson DTO. In that capacity, he recruited and directed other members of the conspiracy and supervised many of the day-to-day aspects of the Robinson DTO's drug trafficking operations, including: travelling internationally to meet with prospective drug suppliers; receiving multiple kilogram quantity shipments of cocaine; distributing bulk quantities cocaine to the Robinson DTO's members and customers; arranging for the delivery of cash payments to the Robinson DTO's sources of drug supply and contracted money launderers; and regularly utilizing his residence as a premises to store bulk amounts of cash and controlled substances on behalf of the Robinson DTO.

The defendant's criminal conduct was not a short-term lapse of judgment. Rather, his participation in the Robinson DTO started, at least, in the summer of 2019 and continued through the date of his arrest in January 2021. During that time, the defendant:

- Traveled internationally at least four times to meet with prospective drug suppliers in Mexico, Jamaica, and Colombia, and purchasing a car trailer in Houston, Texas, for the purpose of transporting cocaine from Houston to Philadelphia.
- Delivered cash drug proceeds, or arranged for co-conspirators to deliver cash proceeds, in the amounts of approximately $244,250, $444,315, $90,245, $865,235,

$395,160, $395,225, and $81,065, for a total of approximately $2,500,000. On July 14, 2020, the defendant and Robinson met with Antoine Davis, a supplier to the Robinson DTO, who was charged in Case No. 20-cr-230, at one of the Robinson DTO stash houses. Investigators stopped Davis' vehicle shortly after the meeting and recovered from the vehicle approximately 21.9 kilograms of cocaine and $2,361,730 in cash. On July 22, 2020, the defendant and another member of the Robinson DTO, Randall Overton, collected bulk quantities of U.S. currency and later delivered that cash to Davis. Shortly thereafter, Davis was car stopped and investigators recovered $2,444,251 in bags that Overton loaded into Davis' vehicle.

- Personally executed, or arranged for co-conspirators to execute, cocaine transactions of approximately 73.6 kilograms, 9.9 kilograms, 23 kilograms, and 30 kilograms. Additionally, in May 2020 and July 2020, the defendant was responsible for obtaining hundreds of kilograms of cocaine from Davis and processing the cocaine for wholesale distribution at a stash house belonging to the Robinson DTO. This process involved gathering many of the Robinson DTO members at a stash house, receiving the cocaine (which was concealed in boxes) from Davis, extracting the cocaine from the boxes, mixing the cocaine with cut and other substances, packaging the cocaine into kilogram-sized bricks, and distributing the bricks to individuals who would then sell the drugs.

During the time that Washington was conducting the above-referenced drug and money transactions, he was also laundering the proceeds of his drug trafficking activities. Starting in at least September 2020, the defendant arranged for cash deposits totaling approximately $396,890 to be made into the bank account of COMPANY #1. Immediately after these funds were deposited, COMPANY #1 disbursed checks totaling approximately $200,000 to a person at the

request of the defendant. The funds were then funneled to the defendant through additional financial transactions and the defendant used the funds for personal expenses, including real estate transactions. By funneling the money through these various accounts, the defendant was able to successfully conceal that the source of the money was cash drug proceeds.

**B. The History and Characteristics of the Defendant**

The defendant committed the crimes in this case, despite having been convicted in this district of bank fraud and drug trafficking offenses. PSR ¶ 109–111. Based on the PSR, the defendant was the leader of a bank fraud scheme in which he recruited individuals to deposit fake checks at TD Bank, resulting in $450,540 in intended loss. When investigators executed a search warrant on the defendant's residence, they recovered 900 oxycodone pills and a computer with blank and fraudulent prescription forms. The defendant was also considered a leader of that scheme because he recruited other individuals to have fraudulent prescriptions for oxycodone fill in their names. The defendant received a sentence of 65 months' imprisonment and 3 years' supervised release.

It is quite troubling that, after serving as a supervisor in these bank fraud and drug trafficking schemes, the defendant did so again in the Robinson DTO.

Nevertheless, when weighing the defendant's characteristics, the Court should also consider that the defendant completely accepted responsibility. The defendant indicated early on through counsel that he intended to plead guilty in Case No. 20-cr-415 and never filed any pretrial motions. He later pled guilty to an additional charge (conspiracy to commit money laundering) pursuant to an information. As a result, the government did not need to present that charge to a grand jury, and the Court did not need to preside over what would have been a lengthy and complex trial or rule on any pretrial or posttrial motions. In sum, the defendant's

early guilty plea allowed the government and Court to allocate their resources efficiently during the pendency of this case.

**C. The Seriousness of the Offense, Respect for the Law, and Just Punishment**

But for the defendant's complete and prompt acceptance of responsibility, a guidelines' sentence may have been warranted to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

**D. Deterrence and Protecting the Public**

The Court must also consider the need to protect the public and to deter the defendant and others from engaging in similar crimes in the future. Here, there is a substantial need for deterrence given that the defendant committed this offense after having committed a prior federal fraud and drug trafficking conviction—for which he was sentenced to 65 months' imprisonment. That case has clearly not deterred the defendant from committing further crimes or caused him to stop pumping illegal drugs into the community. Accordingly, a significant custodial sentence is needed to serve the goal of deterring this defendant and others from engaging in future criminal conduct and protecting the community.

**E. Other Considerations**

There is no need to adjust defendant's sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The government is not aware of any unique issues regarding education, vocational training or medical needs relating to this defendant.

**F. Need to Avoid Unwarranted Sentence Disparities**

To date, ten co-defendants in Case No. 20-cr-415 have been sentenced. Ross Brooks, Marcus Washington, and Marvin Watson, the number 3, 5, and 6 defendants in the indictment,

received sentences of 144, 140 months, and 108 months, respectively. All three had extensive criminal histories (categories IV, VI, and V, respectively). Washington and Watson participated in the conspiracy for over a year, and Brooks had a separate methamphetamine trafficking operation and was found with two firearms at the time of his arrest. Seven lower-level co-defendants have also been sentenced: Melvin Butler, who supplied approximately 19 kilograms of cocaine to the Robinson DTO and had a prior federal drug trafficking conviction, received a sentence of 60 months; Kashon Adade and Randall Overton, who helped process cocaine for wholesale distribution, received sentences of 72 months and 60 months; James Flack, who primarily assisted with money drops over a short period of time, received a sentence of 48 months; Gilberto Alaniz, a Texas-based drug courier with no criminal history, received a sentence of 41 months; Antonio Simmons, a regional supplier, received a sentence of 54 months, and Oscar Von Tyler, a regional supplier with an extensive criminal history and track record of violence, received a sentence of 96 months imprisonment.

In Case No. 20-cr-230, defendant Antoine Davis, who was a large-scale supplier to the Robinson DTO in 2021, received a sentence of 96 months' imprisonment.

A below-guidelines sentence would be consistent with the sentences imposed on other members of the Robinson DTO.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the government submits that a sentence below the guidelines range is appropriate.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Francis A. Weber*
FRANCIS A. WEBER
Assistant United States Attorney

Date: November 20, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Sentencing Memorandum to be served by ECF and email upon counsel for defendant:

William M. Davis, wdavis@mpmpc.com

*/s/ Francis A. Weber*
FRANCIS A. WEBER
Assistant United States Attorney

Dated: November 20, 2024